We'll turn to 24-1331, U.S. v. Becker, Ms. Torrenjay. I hope I got close to that at least. You may proceed. Good morning. Perrin Toronjo on behalf of the appellant Mackenzie Becker. This case asks whether the Fourth Amendment permits police to search a home for evidence of a road rage incident simply because they had seen the suspect and his car there. Three weeks after a road rage incident on I-25, police sought a warrant to search a house on I-Lift Lane, thought to be associated with the suspect, Mr. Becker. The affidavit recounted that Mr. Becker's car was parked at the house two weeks after the incident and that he was seen washing it there roughly one week after that. But beyond the presence of Mr. Becker and his car at the I-Lift Lane house, the affidavit contained no facts suggesting that evidence of the road rage ever made it to the house, let alone remain there at the time of the search. Because the affidavit provided no factual basis for believing that the I-Lift Lane house was more likely than the otherwise endless possibilities where the evidence could be stored three weeks after the incident, as the affiant himself acknowledged, it clearly fell short of establishing the probable cause nexus required by the Fourth Amendment. We therefore ask this court to reverse. Turning first to the probable cause question, we argue the affidavit did not supply probable cause because it contains no facts connecting the road rage incident to the I-Lift Lane house. First... Is there any question about Mr. Becker's relationship to the I-Lift House? I mean, are you challenging the fact that he might have lived there or had some interest in that because, you know, they did have some information from the crime database that he had lived there, at least listed that address. Are you challenging that part of the affidavit? Yes, Your Honor, we are challenging the probable cause to believe that the I-Lift Lane house was Mr. Becker's residence. We agree that there was obviously some association because he had, his car had been seen there once and he had been seen there washing his car once and there were unidentified police records that said it was a second address attributed to him, so we can see that he was associated with the property, but there's not enough evidence to say that this was his residence. Does that matter? Yes, I think it matters, it matters and yet it's not the the core inquiry. The core inquiry is whether there's enough connecting the crime to the place to be searched, but I think residence is relevant and so the fact there isn't an established residence undermines any imprints that the gun would be found at this particular place, but if the court finds this was Mr. Becker's residence, that doesn't defeat our argument because this court has consistently said that simply a probable cause to arrest a person or that they've committed a crime does not get you into their house for a search, so it's relevant but it's not the core inquiry. Does it matter that what the item is they're looking for? I mean, you know, as opposed to say drugs, we're looking for a gun and there was evidence that people tend to treat those differently, that they as a general rule don't throw them away or flush them down the toilet or consume them and they tend to keep them in their homes. Your honor, just to be clear, the only statement in the affidavit regarding the gun and kind of typical patterns around guns was Detective Sloan's statement that people do not typically dispose guns after a crime. He didn't say they typically store them in their houses and this is not case specific, so that's a very generic statement and this court said in Mora that those types of training and experience statements need to be tied to the facts of the case in order to have any weight and here we don't have a statement that, you know, oh, people don't tend to dispose of guns even when they're used in public altercations where there's a serious risk of detection. You know, that would have been a clearer statement but that's a highly generic statement and even crediting it, it says nothing about where that gun is going to be and that's the core inquiry and this court hasn't relied on such generic statements in establishing probable cause before. Do you need to show that the gun was going to be at that place? What if there's several places he frequented? He stayed at his girlfriend's sometimes, stayed at his home, maybe stayed with his mom. Say you had identified the three places where he stayed, wouldn't there be probable cause for each of them? I think that there could be, yes. So I think Roland answers this question. There's no nexus if given the facts in the affidavit, the evidence could be in any number of places and there's no factual way to limit those places or to suggest that the home is more likely than any of the other places. Here, that's what we have. We have no facts. I think you interpreted me to say the opposite of what I meant to say. You don't have to show that it's more likely than not that the gun is at this one place. If there are three places where he might keep the gun, you'd have probable cause for all three. Couldn't you have a probable cause for all three? If you can't say this is the place he always stays, then there's not a probable cause, but I don't think that's the test. Yeah, I think I agree with you that there can be probable cause for multiple places. It's, of course, it's a threshold inquiry rather than the police don't have to eliminate every other possible location. But I think the language in Roland, and I'll pull it up. Roland is a very different case. I mean, first of all, we're dealing with child pornography and the analysis was that there was an almost unlimited number of places where that could be, right? I mean, we don't have a situation here where there's an almost unlimited number of places, do we? I think we do, Your Honor, and I think the affiant himself effectively says that when he says that the gun could be found in any location or vehicle that's associated with Mr. Becker. That's a nearly unlimited number of places and the affidavit doesn't provide us a factual basis for limiting that unlimited number, which is what is required. I think the facts of Roland are relatively pretty similar, even though, of course, we're dealing with child pornography. But first in Roland, the officers knew generally that he had ordered child pornography to be What the affidavit was missing was that he would, whether he would drive directly to work or stop somewhere else, or that he would typically take his mail there. And here we have that Mr. Becker has visited a house that he may or may not live at. But we don't know, just as in Roland, we don't know whether he drove directly from the incident or even in days afterwards to that house. And so we're missing that same sort of connection between how the evidence would arrive at the house. And then we have the additional problem that were three weeks later. So Roland was all of this happened the day that these the child pornography videotapes were delivered. Here were three weeks after the incident. And we don't even have that inference that, I mean, it's pretty reasonable to think that after someone goes to work, they're going to return home with and probably that they bring their mail. Here, there's no inference that Mr. Becker went to the Isle of Lane house at any point until two weeks later is the first time that police see him there. So I think this case is actually a lot like Roland. And just on a kind of gut reaction, it seems that a gun could be in many more places than child pornography videotapes. Personally, it just seems more likely that someone would bring those home than some than a gun that's been used in a public altercation. What about good faith? I mean, even let's talk about good faith. I think here, why wouldn't we be able to affirm on under good faith? I think there are two core reasons. First, that there is nothing, no facts connecting the crime to the house. It's devoid of facts to the house. Unlike court cases like Cotto, where this court is upheld on good faith. Here, we have nothing connecting the crime to the place. And on the face of the affidavit, the officer acknowledges that they don't have a nexus. He says, this could be, the gun could be... The car matches the description that the victims gave. And it has the license plate on it that matches what the victim said. It's associated with Mr. Becker and it's parked in front of the house. He goes in and out of the house repeatedly while he's washing it. I mean, doesn't that connect the crime to the house? I don't think so, your honor. I think all it does is connect. I mean, the crime was, the car was used in the crime. I see the car. To me, I think the car says nothing more than his being there. He's using, just as we all drive around in our cars, the car being at the house says little more than he was there two weeks later. And I think that... What you said is there's no connection between the crime and the house. If the car was an instrumentality of the crime and it is parked in front of the house, isn't that a connection between the crime and the house? I don't think so, just given the nature. I think because we all have to drive around in our cars and there's really no... It says that, that would be... We don't have to drive around in cars that were used in a violent assault. I mean, and that's the issue here. I mean, if there was a bank robbery and it was the getaway car and it was parked in front of the house, do you think there would be probable cause? I think it would depend on when it was parked outside of the house. I think that's the core problem here, is in Cotto, the suspect effectively drove to the house to be searched. He may have stopped somewhere else, but it appears he drove there and then he was seen returning within hours. And that temporal connection is what actually connects, makes the car a reasonable basis to think that the gun was going to be at that house. Whereas here, the first time the car is seen at the house is two weeks later. And so I think that is not as significant. It was seen though as quickly... It took time to develop the evidence that would link Mr. Becker to the shooting. So, I mean, that's kind of... As soon as they found the linkage, they staked out the house, right? I'm not sure that's how the timeline worked. I don't think they give us the date when they are actually looking up the records, but I'm pretty sure by the 14th, so the day after the incident, they had figured out that Mr. Becker was the one who was registered to that car. And they didn't stake the house out until two weeks later, at least according to the affidavit. So I think police had a couple of options here. They could have immediately started staking out the house as they did in Cotto. In Cotto, they immediately figured out who was driving the car and they went to the place where the car was registered, that Apodaca house. They could have done that here within at least a day. Sure, maybe they couldn't have done it the day of, but at least a day. Or they could have taken these three weeks and actually developed a connection to the house. They could have done trash pulls. They could have interviewed the neighbors and said, have you seen anything weird happening here? They could have done an overnight surveillance. There are a number of things that they could have done with those three weeks. I don't think we're asking for perfection from officers here. We're asking for moderate efficiency or using the time that they have to develop a nexus. So your honor, I think that there were plenty of options for them. I think I'll, unless the court has further questions, I'll reserve the remainder of my time. Thank you, Mr. Houlihan. We're not hearing you, Mr. Houlihan. Apologies. Good morning, your honors, and may it please the court. My name is Michael Houlihan. I represent the government in this matter. The question presented by this appeal is simply whether the affidavit supplied the additional evidence needed to connect the road rage shooting under investigation or the evidence of that crime with the location to be searched. The warrant here clearly did so. And to illustrate the point, I'd like to start by highlighting the items that were to be seized pursuant to this warrant as they help to elucidate the larger probable cause narrative. In the main, the warrant sought to seize three items. The defendant, the alleged perpetrator of the road rage shooting under investigation, the defendant's vehicle, one of the two primary instrumentalities of that crime, and firearms and associated items, the other primary instrumentality used in that crime. There is no meaningful dispute that the warrant provides probable cause to believe that the defendant committed the offense under investigation, or the warrant adequately detailed its basis for believing that both the defendant and the vehicle could be found at the Iliff Lane location. In other words, the warrant had already supplied a basis to connect not only the defendant, but one of the two major instrumentalities of the crime to the Iliff location. Those facts, combined with the affiant statement as to where the firearms evidence would likely be found and why, supplied the additional evidence needed to a substantial nexus between the evidence sought and the Iliff location. And some of this court's prior precedents make that point very clear. Beginning with Ron, this court approved of a warrant to search a residence based on PC that was between 10 and 18 months old, and which did not place the firearm to be seized within the place to be searched. In doing so, the court expressly acknowledged that there were other places the gun might have been stored, but upheld the magistrate's inference that the defendant's residence might be one such place. Now, the defendant has tried to distinguish that case away by saying that it turned on, quote, case-specific facts, unquote, connecting the guns to the residence. But in truth, those case-specific facts were simply facts about why the defendant had the guns for hunting or for investment, and natural inferences drawn by the court about where guns possessed for that reason might be stored. The same is true of the affidavit here. The affidavit spells out probable cause to believe that the defendant possessed the gun and used it in the crime, the road rage shooting at issue, and then makes explicit the inference that guns possessed for criminal purposes would usually be kept with the defendant or in his vehicle, drawing on the... Let me test that a little bit. I mean, this is a defendant. He's got outstanding warrants and has just committed a very public gun crime. I mean, it seems to me the smart thing would be to toss it out your window on the way home. And I think you're honored that that would have been another fair statement by the affiant if he said, in my training and experience, people who use guns in crimes often toss them out the window or throw them in the trash. But the affiant made the statement, a factual statement based on his own training experience, that that's not what happens. And so gave the court, the reviewing magistrate judge, a basis for concluding that the firearm would still be with the defendant or in the vehicle used in the crime. And so just closing the loop on how this does compare with the case in Ron, I'd say the case-specific facts do exist here. This is an affidavit saying this gun was used in a crime by this individual and in this car. And then spelling out the additional evidence that the affiant says guns that are possessed for use in a criminal purpose are often kept with that defendant or in their vehicle. Do you think there was probable cause to search the Parker Roadhouse? Your Honor, that would have been a closer call, I think, based on what the affidavit discloses about the nature of that location that when the officers arrived there, they found that there was one vehicle. It didn't appear to be the vehicle that was used in this crime. It appeared to be abandoned. And then they had traveled to a second location and seen the defendant and the vehicle in a manner that was consistent with residence or at least presence in that second location at a high level. So I think that the affidavit, if it had sought to search the Parker Road location and disclose the same facts, it would have been a much closer call. But I think the combination of factors that were seen in the Isle of Road location gives a clear basis for thinking that that is a location where the defendant might be found. And, Your Honor, on that point, I noted your question about the relationship or whether the relationship between Mr. Becker and the Isle of Location is contested. I just want to re-highlight some of the data points that do support the relationship between him and the Isle of Location. First, there is the law enforcement database that associated defendants with the Isle of Location. I'll come back to that in just a moment. Second is the presence of the car that was used in the crime. And it's depicted in two different photographs on page seven of the warrant, where it is parked very tight to the garage at Isle of Lane. And third, there was the defendant himself walking in and out of the location, in and out of the car, and later hand-washing the car in the driveway. In addition to the points that are made expressly, the facts that the warrant supplies support the magistrate's reasonable inference that defendant resided at that property. For instance, the location of the vehicle is depicted in the warrant as telling. In both of the two pictures on page seven of the warrant, the car is parked immediately up against the garage at the end of what appears to be a medium-length driveway set away from the road. The reviewing magistrate might well have drawn the reasonable inference from that placement, along with other facts in the affidavit, like the defendant walking in and out of the house and washing the car, to conclude that he was, at least at the time of the warrant's execution, residing within that location. Regarding the database check, defendant has made much of the point that the database was unidentified. And I would concede that under Roach, that entry enough would not be alone to support a substantial nexus. However, in this case, it did not stand alone. The officer's documents... I'm sorry, what did you just say? In this case, the database was not what? The case, the database did not stand alone. It was corrupt. The facts that are contained in that database are corroborated by officer's direct observations. And in light of that corroboration, the database entry takes on additional value. It tends to support the determination in the magistrate's review that the defendant had an established connection with the property prior to the documented observations contained within the face of the warrant. As an aside, I'm primarily going to be focusing on the probable cause determination here, but I would note that the court in Roach found that even the unadorned reference to a database check in a warrant was sufficient to overcome the minimal nexus hurdle for good faith. Finally, I want to address, Judge Timothy, to your follow-up point, whether or not it does matter that whether or not this Isle of Layton location was where Mr. Becker resided or simply where he could be found. Because it is clear under this court's precedence that whether or not a location is or is not a defendant's residence is neither necessary nor sufficient to establish probable cause to search for firearms. So while cases like Al-Qahtani and Ron make clear that the defendant's residence was an important factor, it was not the only factor. What matters is the affidavit establishes the additional evidence linking the crime under investigation or evidence of that crime to the particular location it was searched. What about the temporal issue that it's three weeks after anybody's seen this gun? Well, there, Your Honor, I think that the primary answer on the face of the warrant is supplied by the affiant statement that firearms are not the type of evidence that one is likely to discard and so that they would be kept with Mr. Becker. And both because the court is entitled, the magistrate judge was entitled to review or rely on that statement and also draw from their own reasonable inferences about how this firearm had been used, for instance, that Mr. Becker clearly had it on him at the time of the road raid shooting immediately next to him. I don't think it was unreasonable to say, well, three weeks later it might be in the same position. And if we looked at that question only as a matter of good faith, I noted the court's questions about the time length in Kodo, for instance, where it was a matter of hours. But I would direct the court to the discussion within Kodo distinguishing cases in which no good faith was found, Gonzalez and Dutton. In distinguishing those two cases, the court took note of only two facts. One, the presence of the car that was used to flee from the scene of the road rage shooting in that case, as well as the defendant's physical presence. On those facts alone, not noting the duration of time or lack thereof, the court found there was a sufficient basis on the face of the warrant to clear the hurdle. But again, looking at cases like Ron, for instance, where there had been a 10 to 18 month gap in any of the probable cause and no showing that Mr. Ron had ever possessed the firearms in the house, the court still found there was a sufficient basis based on the nature of the items possessed, as well as some of the facts around why Mr. Ron possessed those firearms to conclude that there was still probable cause to believe they were in the location to be searched. I'd also like to briefly discuss the challenge statement and the comparison between the defiant statement, in this case, that the firearm is not usually disposed of, following the commission of a crime and defendant's characterization of that statement as conclusory. Simply put, the government doesn't agree that that is a conclusory statement. It states its conclusion that the firearm is still likely to be found in any location or vehicle associated with Becker, but then supplies the basis for the assertion. The defiant statement drawn on his own training and experience that a firearm is not normally disposed of after the commission of a crime. I agree that there was a somewhat similar statement within Mora that this disapproved of, but there I think the question was not simply the fact that the defiant statement stated what would usually happen with evidence, but also posited the existence of evidence which was otherwise not found on the face of the warrant. The court took issue with the fact that in that case, the defiant stated that there would be a cell phone based on their training experience and that it would be found in the house. There were no facts to support either of those two points. The distinction here is that there is probable cause to believe both that there was a firearm and that it had been in Mr. Becker's possession prior to the search. The other case that I wanted to highlight in that regard is this court's decision in Harris in which the court approved of an affiance assertion that individuals connected to a violent crime or conspiracy are known to sometimes hide incriminating evidence at a friend's place or keep it at a common clubhouse. So that case, there was other evidence that established the nature of the location to be searched and the connection between the driver who was under investigation at that time and this sensible clubhouse, but it was the affiance statement of opinion as to where evidence might be found that was the linchpin of the nexus in particular. So stating that otherwise, knowing that there is a clubhouse in which evidence might be stored 18 months after the fact of a crime does not actually establish a nexus between that 18-month-old crime and the location to be searched, it was only the affiance statement that, bless your eye, it was only the affiance statement that the evidence of that 18-month-old crime might well be found within this particular clubhouse that established the nexus required to search for that evidence. So consider the analog of that statement here where the affiant provides a probable cause to believe the location is defendant's residence or at very least the location where he might be found and then asserts that firearms are often retained with an individual following their use in crime. So viewed in that light, the statements accomplish largely the same purpose. They connect a location characterized by other evidence in the affidavit with the evidence that has been sought by the warrant. And with that, I see I have two minutes left, Your Honor, but I will take any questions the panel has but otherwise ask that the Court affirm the decision below. Questions? Thank you. Ms. Tourgeau? Thank you, Your Honor. Just a few points. First, it cannot be the case that probable cause to find Mr. Becker or his car at the residence equals probable cause to find evidence at the house. That would have been true in Roland and in any case where you know that the defendant lives somewhere or he might live somewhere. So I just want to say that cannot be the case. Second, Ron is completely different from this case and actually shows what the affidavit is missing here. In Ron, there were case-specific reasons to think that the gun was going to be at the house and it was going to be kept there over time. The conspirator had said that he wanted to let guns appreciate. His co-conspirator had pawned the guns whereas he had not. They looked at pawn records and he had not. He had used one of the guns hunting for personal use and the court said, okay, well, if you're using them for hunting and personal use, more likely to be at a home. And he was an ATF agent so he couldn't be storing them at work. And the fact that he was going to let them appreciate made it seem like he was going to give care to their storage. That's all those are case-specific reasons to think that the gun was still at the house. Ron is completely different from this case. Third, the officer's generic statement about guns not typically being disposed of after crime, it does not support probable cause under Mora. It is boilerplate. It's generic. It is not tied to the case-specific circumstances here. The court, as Judge Timkovich said in his concurrence in Mora, the court- Why was it more likely that he would dispose of it here? And because it was used in a crime that's public where his license plate number is tied to that car, as the court in Wilson said- So you would say the likelihood is very great that he would dispose of the gun right after the incident. Maybe while he's driving away, toss it to the side of the road because now we're talking about a couple of weeks later and nothing's happened to him. So it's not like- So if he was going to dispose of it, for the reason you say, he would dispose of it immediately afterwards. So if they went to his house, wherever that was, the next day or later that day, you wouldn't have probable cause to look for the gun because it'd be so likely he would have disposed of it beforehand. Is that where your argument takes you? I think they would need some reason to think that it came back with him. Any evidence that he was taking things that could hold a gun in and out of the house. There's nothing like that here. Or even just if it was right afterwards, okay, maybe there's a good chance. But I think there's nothing here connecting the gun to the house three weeks later. We'd ask this court to reverse. Thank you. Thank you, counsel.